UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SCOTT LAKE,
on behalf of himself and all
other similarly situated,

      Plaintiff,

v.                            Case No. 8:20-cv-3010-VMC-TGW

AETNA LIFE INSURANCE COMPANY,
and PINELLAS COUNTY SCHOOL
BOARD,

      Defendants.

_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant Pinellas County School Board's Motion to Dismiss and Motion to Strike (Doc. # 9), filed on December 23, 2020. Plaintiff Scott Lake responded on January 20, 2021. (Doc. # 28). For the reasons below, both Motions are granted.

**I.**   **Background**

This case arose out of the denial of insurance coverage for Lake's prostate cancer treatment. (Doc. # 1-1 at ¶¶ 1, 54). Lake's wife "is an Aetna [Life Insurance Company] policyholder with a self-funded insurance plan through her employer, the School Board." (Id. at ¶ 8). "Lake is covered as a dependent under that policy." (Id.). Following Lake's prostate cancer diagnosis in May 2019, his oncologist

1

recommended that he undergo proton beam radiation therapy, "a procedure that uses protons to deliver a curative radiation dose to a tumor, while reducing radiation doses to healthy tissues and organs." (Id. at ¶¶ 27, 54). According to the complaint, proton beam radiation therapy "results in fewer complications and side effects than traditional [radiation therapy]." (Id. at ¶ 27). Lake avers that this form of treatment "has been well-accepted for over 30 years," having been approved by the Food and Drug Administration in 1988, and subject to numerous peer-reviewed studies validating its safety and efficacy. (Id. at ¶¶ 30-31).

However, Aetna denied Lake's request to pre-authorize his proton beam radiation therapy because his plan "does not cover experimental or investigational services except under certain conditions." (Id. at ¶ 55). Aetna stated that it reviewed Lake's condition and circumstances, but referred him to Aetna's "Clinical Policy Bulletin" on proton beam radiation therapy, which states: "Aetna considers proton beam radiotherapy not medically necessary for individuals with localized prostate cancer because it has not been proven to be more effective than other radiotherapy modalities for this indication." (Id. at ¶¶ 35, 56).

Following this denial, "UF Health submitted two internal

2

appeals on [Lake's] behalf, asking that Aetna reconsider its decision to deny coverage or payment for [proton beam radiation therapy]." (Id. at ¶ 57). Both of those appeals were denied. (Id. at ¶¶ 58-59). "Lake then formally requested an external review of Aetna's decision to deny his request for [proton beam radiation therapy]." (Id. at ¶ 61). The independent review conducted by AllMed Healthcare Management indicated that it agreed with Aetna's denial of coverage. (Id. at ¶ 62).

Lake then made one final appeal to the School Board, which allegedly holds "ultimate responsibility for the final review of claims under [Lake's] health benefits plan." (Id. at ¶ 63). The School Board again "upheld [Aetna's] . . . previous denial decisions." (Id. at ¶ 65). In denying the appeal, the School Board explained that the therapy was "not covered under Aetna's Clinical Policy Bulletin because the procedures are 'experimental and investigational.'" (Id.). Despite these denials, Lake followed his oncologist's recommendations, and underwent proton beam radiation therapy. (Id. at ¶ 66). "Lake personally paid over $78,000 for the treatment[.]" (Id.). Although Aetna did not reimburse Lake for the treatment itself, it did reimburse him for "some ancillary charges." (Id.).

On October 30, 2020, Lake initiated this putative class action in state court. (Doc. # 1). Thereafter, on December 17, 2020, the case was removed to this Court on the basis of Class Action Fairness Act ("CAFA") diversity jurisdiction. (Id.). Lake seeks class certification on behalf of other similarly situated Aetna customers who were denied coverage for proton beam radiation therapy. (Id. at ¶ 68). Lake also proposes two subclasses: (1) for class members whose plans were underwritten or administered by Aetna under Florida law, and (2) for class members whose plans were underwritten or administered by Aetna for the School Board. (Id. at ¶¶ 69-70). The complaint includes only one claim against the School Board: breach of the implied covenant of good faith and fair dealing (Count II). (Doc. # 1).

On December 23, 2020, the School Board moved to dismiss Count II and to strike Lake's request for disgorgement of the School Board's profits. (Doc. # 9 at 1). In the alternative, the School Board joins Aetna's motion to strike Lake as the class representative. (Id. at 13). Lake responded on January 20, 2021 (Doc. # 28), and the Motion is now ripe for review.

## II.  **Legal Standard**

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court accepts as true all the

allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations and citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

Under Federal Rule of Civil Procedure 12(f), a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Fed. R. Civ. P. 12(f). However, motions to strike are considered drastic remedies, and are thus disfavored by courts. See Thompson v. Kindred Nursing Ctrs. E., LLC, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002). Indeed, they are generally denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." Agan v. Katzman & Korr, P.A., 328 F. Supp. 2d 1363, 1367 (S.D. Fla. 2004) (citations omitted).

III. **Analysis**

The School Board moves to dismiss Count II – the only claim against it – and to strike Lake's request for disgorgement of the School Board's profits. (Doc. # 9) Alternatively, the School Board joins Aetna's motion to strike Lake as the class representative. (Id.). The Court will address each Motion in turn.

A. **Motion to Dismiss**

The School Board argues that Count II, Lake's claim for breach of the implied covenant of good faith and fair dealing, should be dismissed because the complaint "is devoid of any allegation that the School Board breached an express term of the parties' contract." (Doc. # 9 at 3, 7-11). Lake responds that "the failure to perform a discretionary act in good faith may constitute a breach of the implied covenant of good faith

6

and fair dealing. And, [Lake's] claim clearly refers to the provision under the Plan affording the School Board discretion over the final appeal decision concerning a claim denial." (Doc. # 28 at 3).

"Florida courts recognize an implied covenant of good faith and fair dealing in every contract." Shibata v. Lim, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) (citing Burger King Corp. v. C.R. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999); Cnty. of Brevard v. Miorelli Eng'g, Inc., 703 So.2d 1049, 1050 (Fla. 1997)). "However, there are two limitations on such claims: (1) where application of the covenant would contravene the express terms of the agreement; and (2) where there is no accompanying action for breach of an express term of the agreement." QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc., 94 So.3d 541, 548 (Fla. 2012).

Here, Lake maintains that the School Board breached the implied covenant of good faith and fair dealing by:

    a) Exercising its discretion to deny Plaintiff's treatment relying exclusively on Aetna's [proton beam radiation therapy] Clinical Policy Bulletin and Aetna's prior denials;

    b) Failing to review the medical records, medical literature, and other materials that Plaintiffs' doctors submitted with his appeals of denial;

    c) Exercising its discretion to determine that [Lake] and the Subclass members' [proton beam

radiation therapy] treatment was not medically necessary and was experimental or investigational despite overwhelming medical evidence to the contrary; and

d) Exercising its discretion to deny [Lake's proton beam radiation therapy] treatment to increase its own profits and avoid paying for a higher-cost treatment.

(Doc. # 1-1 at ¶ 103).

Although Lake refers to his wife's insurance agreement with the School Board, he does not point to an express provision of that agreement that the School Board breached in his complaint. (Id. at ¶¶ 95-105). Lake posits that as the sponsor of his plan, the School Board has the "ultimate authority over final appeal decisions to claim denials" and "has extensive and ultimate discretion to determine whether a treatment is 'medically necessary' or 'experimental and investigational.'" (Id. at ¶¶ 100-01). But, the complaint does not state that there is any such express provision in an agreement, nor does it state that such a provision was breached. (Doc. # 1-1). This alone is fatal to Lake's claim. See Sapuppo v. Allstate Floridian Ins. Co., No. 4:12-cv-382-RH/CAS, 2013 WL 6925674, at *6 (N.D. Fla. Mar. 12, 2013) ("[A] party cannot recover under the implied covenant if there has been no breach of a specific contract provision. This is fatal to the implied-covenant claim."), aff'd, 739 F.3d 678 (11th

Cir. 2014); <u>see</u> <u>also</u> <u>Diageo Dominicana, S.R.L. v. United</u>
<u>Brands, S.A.,</u> --- So.3d ----, 2020 WL 2892566, at *3 (Fla. 3d
DCA June 3, 2020) ("Allowing a claim for breach of the implied
covenant of good faith and fair dealing where no enforceable
executory contractual obligation exists would add an
obligation to the contract that was not negotiated by the
parties." (internal quotation marks and citation omitted)).

In his response to the Motion, Lake states that this
implied duty stems from provisions of his plan with Aetna,
under which "the School Board has the discretion to uphold or
reverse the [external review organization's] decision on the
denials" of Lake's claims. (Doc. # 28 at 7). Lake cites to
the "Aetna Select Medical Plan, at pages 8, and 58 – 59
attached as Exhibit A to the Complaint." (<u>Id.</u> (internal
quotation marks omitted)). However, none of those pages
include the provision Lake alleges they include. Page 8 of
the plan states: "The plan tells you how we work through our
differences. And if we still disagree, an independent group
of experts called an 'external review organization' or ERO
for short, will make the final decision for us." (Doc. # 1-1
at 39). This page does not state that the School Board has
discretion to reverse the external review organization's
final decision. (<u>Id.</u>). Next, Lake offers pages 58-59 of the

plan, but these pages do not include the alleged provision either. (Id. at 89-90).

Accordingly, the Motion is granted and Count II is dismissed without prejudice. See W. Coast Invs., LLC v. D.R. Horton, Inc., No. 19-CV-14360-ROSENBERG/MAYNARD, 2020 WL 533988, at *3-4 (S.D. Fla. Feb. 3, 2020) (dismissing an implied covenant claim because the court could not discern from the complaint any allegation that an express contractual duty was breached); see also Alhassid v. Bank of Am., N.A., No. 14-CIV-20484-BLOOM/Valle, 2015 WL 11216719, at *2 (S.D. Fla. Jan. 21, 2015) ("Further, the covenant cannot 'add an obligation to the contract which was not negotiated by the parties and *not in the contract*.'" (emphasis added) (citation omitted)).

**B. Motion to Strike**

Next, the School Board moves to strike Lake's request for disgorgement of its profits, arguing that such equitable relief is unavailable in breach of contract cases. (Doc. # 9 at 11-12). In his response to the instant Motion, Lake "withdraws his claim for disgorgement of profits and other equitable relief to the extent it is asserted against the School Board." (Doc. # 28 at 1 n.1). Accordingly, the Motion is granted, and the request for disgorgement of the School

Board's profits is stricken from the complaint.

Given that the School Board's Motion to Strike plaintiff as the class representative was argued in the alternative to its other Motions – which have been granted – and was premised solely on the arguments in Aetna's first motion to dismiss, which has since been amended, the Court denies the Motion without prejudice. (Doc. # 9 at 13; Doc. # 41). The Court grants Lake's request for leave to file an amended complaint. (Doc. # 28 at 9).

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant Pinellas County School Board's Motion to Dismiss (Doc. # 9) is **GRANTED.**

(2) Count II is **DISMISSED** without prejudice.

(3) Plaintiff Scott Lake may file an amended complaint by **April 9, 2021.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 26th day of March, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE